UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERT KALMAN, : | |
|     Plaintiff, : | CIVIL ACTION NO. |
| : | 3:02-CV-2052 (JCH) |
| v. : | |
| : | |
| ALEXANDER CARRE, ET AL., : | JANUARY 13, 2005 |
|     Defendants. : | |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 36]**

The plaintiff, Robert Kalman, initiated this action against the defendants, Alexander Carre, James Cassidy, Sean Hart, and Susan McKinley, on November 19, 2002. [Dkt. No. 2] The plaintiff's Amended Complaint [Dkt. No. 25] alleges violations of the Americans with Disabilities Act, 42 U.S.C. section 12101, the Eighth and Fourteenth Amendments of the United States Constitution, and certain provisions of the Connecticut Constitution. On March 16, 2004, the defendants filed a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure [Dkt. No. 36].

**I.    STANDARD OF REVIEW**

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgement as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). The burden of showing that no genuine factual dispute exists rests upon the moving party. Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir.2000) (citing Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1223 (2d Cir.1994)).

1

Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir.2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgement is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton, 202 F.3d at 134. "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir.2000).

## II.    FACTS

The facts are viewed in the light most favorable to the non-moving party, the plaintiff.[1] On October 30, 2001, Kalman was found not guilty by reason of mental disease or defect of certain violations of the Connecticut Penal Code. Pursuant to Connecticut law, Kalman was committed to the custody of the Commissioner of Mental Health and Addiction Services. Conn. Gen. Stat. § 17a-582(a) (providing that any individual found not guilty by reason of mental disease or defect be committed in a state

---

[1] The plaintiff has not submitted a Statement of Disputed Facts as required by Local Rule 56(a). He has, however, contested certain facts in the course of his Memorandum of Law in Support of Plaintiff's Objection to Defendant's Motion for Summary Judgment [Dkt. No. 46]. For the purposes of this ruling, any facts alleged by the defendants in their Rule 56(a)(1) Statement and not disputed by the plaintiff are taken as true. Any facts alleged by the plaintiff in the course of his Memorandum of Law [Dkt. No. 46] are taken as true.

hospital for psychiatric disabilities for an examination to determine his or her mental condition). The defendants submitted a report, pursuant to section 17a-582(b), evaluating Kalman's mental condition and providing findings and conclusions with respect to whether Kalman ought to be discharged. The report recommended, based on conclusions regarding his mental health, that Kalman be committed in a maximum-security facility.

On September 26, 2002, a hearing was held in Superior Court pursuant to section 17a-582(e), which section requires that a court "make a finding as to the mental condition of the acquittee" and order that the acquittee be confined, conditionally released, or discharged. In the course of the hearing, the court considered the report submitted by the defendants as well as the evaluations and testimony of independent and attending physicians. Trans., Superior Court, September 26, 2002 [Dkt. No. 43], Ex. J. The court ordered Kalman committed to the jurisdiction of the Psychiatric Security Review Board ("PSRB") in a maximum security facility. The court also notified Kalman of his right to appeal the court's order and his right to a hearing before the psychiatric review board. The plaintiff, through counsel, filed an appeal of that order. State v. Kalman, A.C. 23653 [Dkt. No. 43, Ex. K]. That appeal is pending.

Under Connecticut law, upon assuming custody of an individual acquitted by reason of mental disease or defect, the PSRB must review that individual's confinement status. The PSRB undertook a hearing to review Kalman's confinement and released a report detailing its findings on February 21, 2003. [Dkt. No. 43, Ex. C]. Represented by counsel, Kalman has appealed that administrative finding by the PSRB that he is

subject to confinement by that agency. Kalman v. Psychiatric Security Review Board, Docket Number 520024 (Conn. Super. Ct. March 19, 2003) [Dkt. No. 43, Ex. L]. An action initiated by Kalman in District Court to contest the PSRB's finding was dismissed. Sastrom v. Berger, 2004 WL 253495 (D. Conn. February 10, 2004).

## III.    ANALYSIS

Defendants provide multiple bases for their motion for summary judgment. Two of these, immunity and abstention, are jurisdictional and ought to be addressed prior to reaching any other issues.

### A.    Absolute and Qualified Immunity

Officials performing a judicial function are entitled to absolute immunity. Absolute and qualified immunity are immunity from suit. If an official is entitled to such immunity, there can be no finding that liability attaches to him or her. Furthermore, where a defendant is immune from suit, this court lacks subject matter jurisdiction. Whether immunity exists is determined according to the function performed by an official, not that official's title. Therefore, judges, when they are performing a judicial function, are generally entitled to absolute immunity so long as they are not acting in the "clear absence of jurisdiction." Stump v. Sparkman, 435 U.S. 349, 357 (1978). When the role played by a judge or prosecutor is administrative, however, absolute immunity does not attach. Similarly, where an official who is not a judge nonetheless performs a judicial function, absolute immunity will attach. Hili v. Sciarrotta, 140 F.3d 210 (2d Cir. 1998); Hughes v. Long, 242 F.3d 121, 126 (3d Cir. 2001) (finding that where an official act as "arms of the court" or where "a non-judicial person . . . fulfills a quasi-judicial role

4

at the court's request," that person is entitled to judicial immunity).  The policy underlying this rule is clear.  Absolute immunity must attach to such officials for the same reason it attaches to judges performing their judicial function.  It is in the best interests of society that officials performing judicial functions be motivated by that societal interest and not by the fear of a future lawsuit.

Furthermore, in the context of judicial proceedings, there are mechanisms by which individuals may pursue remedies for the violation of their rights short of initiating a lawsuit.  Where an individual believes that a judge or judicial officer has failed in his or her duty or has otherwise deprived him of his rights under federal law, that individual can appeal the court's order or ruling.  Where that individual contests being held in state custody, the writ of habeas corpus provides an additional avenue for relief.  "Underlying [absolute judicial immunity], then, is the notion that private rights can be sacrificed to some degree to the achievement of the greater public good deriving from a completely independent judiciary, because there exist alternative forums and methods for vindicating those rights."  Stump, 435 U.S. at 370 (Powell, J., dissenting).  In the instant case, Kalman had, and has pursued, the right to appeal the Superior Court order confining him to a maximum security facility.  In addition, the state entity in whose custody Kalman resides provides an administrative procedure for contesting one's confinement.  Kalman has taken advantage of such procedure, as well as the right to appeal any administrative finding, in order to argue that he ought to be properly treated in a community setting rather than confined in a maximum security facility.

The Second Circuit has held that New York State probation officers, like federal

probation officers, enjoy absolute immunity from suits for damages with respect to the preparation and submission of presentence reports.  Hili, 14 F.3d at 214.  The court based its ruling on "[t]he requirements of New York law with respect to the preparation and submission of presentence reports, along with the procedural mechanisms protecting the defendant's right not to be punished on the basis of inaccurate information."  Id.  The Second Circuit found that certain procedural mechanisms or safeguards protected defendants rights such that non-judicial officers serving a judicial function were entitled to judicial absolute immunity.  The court considers, then, whether Kalman's rights are similarly safeguarded.

    Like state criminal defendants, Kalman has certain rights under federal and state law.  For example, he has the right to due process and equal protection under the 14th Amendment in the course of his state proceedings.  It is possible that, as he argues, he is entitled to further protection under the Americans with Disabilities Act and the Connecticut Constitution.  Nonetheless, as is the case with the New York State criminal defendant who contested the veracity of a presentence report prepared by probation officers, Kalman's rights are protected by safeguards in Connecticut law.

    The statute under which Kalman has been confined provides for a court to make a determination, during the course of a hearing, whether an individual acquitted of a crime by reason of mental disease or defect ought to be confined, conditionally released, or discharged.  The state must conduct an examination to determine the mental condition of such an individual.  The acquittee, however, has the right to request that an independent evaluation be conducted by a psychiatrist or psychologist of his

choosing and, if the acquittee is indigent, the state must assume the expense of such an evaluation. Conn. Gen. Stat. §17a-582(c). The court then considers both reports as well as any other evidence, including witness testimony, provided by the parties.

     Section 17a-582 further provides that a person found not guilty by reason of mental disease or defect may contest a court's order regarding confinement or conditional release. Conn. Gen. Stat. §17a-582(g) ("An order of the court pursuant to subsection (e) of this section may be appealed by the acquittee or the state's attorney to the Appellate Court. The court shall so notify the acquittee.") Kalman has appealed his confinement. Furthermore, following entry of the court order committing him to the PSRB's custody, the PSRB, pursuant to section 17a-583, conducted a hearing to review Kalman's status. At that hearing, the PSRB considered the discharge, confinement, or conditional release of the plaintiff and concluded, on the basis of testimony by defendant Carre and Dr. Sabita Rathi, who is not a defendant in this action, that Kalman is mentally ill "to the extent that his discharge or conditional release would constitute a danger to himself or others" and that he ought to be confined. [Dkt. No. 43], Ex. C. That finding is subject to periodic review biannually. Conn. Gen. Stat. §17a-585. In addition, that finding is subject to administrative appeal. Conn. Gen. Stat. §17a-597 ("Any order of the board entered pursuant to subdivision (2) or (3) or section 17a-584 . . . may be appealed to the superior court . . . ."). Represented by counsel, Kalman has pursued an administrative appeal in Superior Court. [Dkt. No. 43, Ex. L]. This court concludes that such safeguards of Kalman's rights with respect to confinement support a finding that the doctors responsible for preparing and providing

psychological reports to the Connecticut courts in the course of such courts' determination of an individual's mental health and confinement status are entitled to absolute immunity in the course of performing such function.  See Hili, 140 F.3d at 214.

Courts in other jurisdictions have similarly found that doctors performing a psychiatric or psychological evaluation pursuant to court request are entitled to absolute immunity for the preparation and submission of that evaluation.  See, e.g., Hughes v. Long, 242 F.3d 121 (3d Cir. 2001) (holding that a licensed clinical social worker and a licensed clinical psychologist who, in accordance with court order, evaluated parents in child custody dispute were entitled to judicial immunity from suit for damages by father who alleged that reports were false and misleading); Moses v. Parwatikar, 813 F.2d 891 (8th Cir. 1987) (holding that "a psychiatrist appointed by the court to conduct a competency examination" of a criminal defendant performs "functions essential to the judicial process" and, as such, enjoys absolute immunity in performance of such functions), cert. denied, 484 U.S. 832 (1987); Seibel v. Kemble, 63 Haw. 516 (1981) (holding that psychiatrists who, upon appointment by a court, recommended the release of a man acquitted of a crime by reason of mental disease or defect enjoyed judicial immunity from suit for damages by relatives of a woman later killed by the man released).

Therefore, the defendants are entitled to absolute immunity from Kalman's claims for monetary damages.  Kalman also claims declaratory relief.  While there may be some question whether absolute immunity attaches to a claim against non-judicial officers performing a judicial function where a claim is made for declaratory relief, the

court need not reach the question of whether the defendants are entitled to absolute immunity from such claims because it finds that reaching the questions Kalman offers for resolution would be improper in light of pending state proceedings. See discussion, infra, at 9-10.

### B. Abstention

In certain instances, principles of equity and comity preclude lower federal courts from considering factual circumstances that are pending before state courts. Younger v. Harris, 401 U.S. 37 (1971). The principles of Younger are fully applicable where the relief sought by the plaintiff in federal court is declaratory. Samuels v. Mackell, 401 U.S. 66 (1971); see also Morano v. Dillon, 746 F.2d 942 (1984) (refusing to consider merits of plaintiff's constitutional claim where the plaintiff had filed an appeal, then pending, of his criminal conviction as well as an appeal of an administrative decision). Following Younger and Samuels, the Supreme Court made clear that "[t]he policies underlying Younger are fully applicable to noncriminal judicial proceedings when important state interests are involved." Middlesex County Ethics Comm. v. Garden State Bar Ass'n., 457 U.S. 423, 432 (1982); Huffman v. Pursue, Ltd. 420 U.S.592 (1975). Such noncriminal proceedings include Kalman's appeal of the PSRB's administrative ruling denying him either discharge or conditional release.

In the instant case, there are undoubtedly pending judicial proceedings in the state courts. Kalman, represented by counsel, has appealed the court order mandating his confinement. That appeal is currently pending before the Appellate Court. Kalman has also appealed an administrative finding by the PSRB that he ought to be confined.

9

That appeal is currently pending before the Superior Court.  Furthermore, important state interests are involved in both proceedings.  Public safety and the treatment of individuals who have, as a result of mental disease or defect, engaged in criminal activity are both important state interests.  The statutory framework in Connecticut that provides for treatment, confinement, and release of individuals who have been acquitted of crimes upon a jury finding that they suffer a mental disease or defect prioritizes public safety.  The laws are drafted to balance an individual's liberty interest and interest in treatment of her disability alongside an interest in safety.  See Conn. Gen. Stat. §17a-582(e) (describing the court's primary concern in the context of a confinement hearing as "the protection of society); Conn. Gen. Stat. §17a-584 (describing the PSRB's primary concern when considering discharge, conditional release or confinement as "the protection of society").

Kalman is entitled to assert his rights under the federal constitution as well as federal statutes in the pending state proceedings.  Kalman has neither alleged nor provided any evidence of bad faith or harassment on the part of any parties in the state court.  Younger, 410 U.S. at 53.  Nor has he provided any evidence of extraordinary circumstances or irreparable injury that would result should this court abstain from deciding issues presently before state tribunals.  Id.  Therefore, the court finds that abstention is proper under these circumstances.  Finding that defendants' absolute judicial immunity and abstention pursuant to Younger v. Harris require the court to rule in the defendants' favor, it is neither necessary nor appropriate to consider the defendants' remaining arguments in favor of summary judgment.

## IV. Conclusion

For the foregoing reasons, the defendants' motion for summary judgment is GRANTED.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 13th day of January, 2005.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge